**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

PALM PROPERTIES, LLC                                                                                    PLAINTIFF

v.                                        No. 4:09CV00038 JLH

METROPOLITAN NATIONAL BANK;
C-METRO, INC., d/b/a CENTURY 21
METRO, INC.; and JOHN DOES                                                                         DEFENDANTS

**OPINION AND ORDER**

Palm Properties, LLC, brought this action for breach of contract, fraud, and civil conspiracy against these and other named defendants regarding a contract for exchange of real estate between Palm Properties, Capital Development of Arkansas, Inc. ("CDA"), and Indy 10, LLC, a designee of CDA. On December 10, 2009, Palm Properties filed a motion for partial summary judgment, arguing that CDA breached the contract by failing to transfer title to the property free and clear of all encumbrances and that Palm Properties was entitled to the funds it had paid to the escrow agent as a matter of law. The Court denied the motion for partial summary judgment, finding a genuine issue of material fact as to whom the funds belong.

On April 21, 2010, C-Metro, a creditor of CDA, filed a motion for summary judgment, arguing that it was entitled to the funds that were being held in the escrow account because the funds belonged to CDA and C-Metro had obtained a default judgment against CDA and served a garnishment on the escrow agent. Palm Properties filed a response in opposition to the motion. Then, on May 19, 2010, this Court granted a joint motion to dismiss with prejudice Palm Properties' claims against CDA, Indy 10, and a several other named defendants. On May 25, 2010, Palm Properties filed a cross-motion for summary judgment, arguing, as a matter of law, that it, not

C-Metro, was entitled to the funds held by the escrow agent. C-Metro has responded, and the summary judgment motions are ripe for adjudication. For the following reasons, both motions for summary judgment are denied.

## I.

Palm Properties entered into an Exchange Agreement with CDA wherein Palm Properties agreed to exchange an apartment complex and storage unit in Indianapolis, Indiana, for a number of condominium units in Toxaway Falls, North Carolina, (hereinafter the "Toxaway Property") and residential lots in Maumelle, Arkansas, (hereinafter the "Maumelle Property") that were owned by CDA. The Exchange Agreement was amended twice. Per the Second Amendment to the Contract, CDA agreed to exchange three condominium units in Toxaway Falls and ten single family lots in Maumelle for Palm Properties' apartment complex and storage unit in Indiana.[1] Upon execution of this Second Amendment, CDA conveyed to Palm Properties Lot 16 of the Maumelle Property as a non-refundable deposit.

Palm Properties and CDA executed a Closing Agreement on October 17, 2008. Because Palm Properties did not have the funds available to close, it requested that CDA advance the funds for closing and agreed to reimburse the funds within sixty days. CDA agreed that it or its designee Indy 10 would advance the funds, and Palm Properties agreed to convey the title to its apartment complex and storage unit to Indy 10. In the Closing Agreement, the parties amended the description of the property that CDA would convey; they changed the Maumelle Property to include thirteen

---

[1] The Maumelle Property included: Lots 21, 25, and 26 of Osage Terrace, Phase 1-C; Lots 6, 16, 54, and 67 of Osage Terrace, Phase 1-B; Lots 212 and 213 of Osage Terrace Addition; and Lot 7 of Osage Falls, Phase IV.

residential lots (increased from ten)[2] and the Toxaway Property to include two condominium units (decreased from three). The parties agreed that CDA would convey the Toxaway Property and one lot of the Maumelle Property at the time of closing;[3] the remaining eleven lots were to be delivered into escrow with Metropolitan Title Company, doing business as Triad Title Company ("Triad"). Palm Properties would be entitled to receive the remaining lots if certain conditions were met:

> A. If within sixty (60) days after the closing date, Palm shall have repaid to CDA's designee, Indy 10, LLC, the full amount of the Advancement (**plus** such other amounts as represent obligations of Palm with respect to the Palm Property for work completed prior to October 17, 2008, which were unpaid, unknown or undisclosed at closing and which have been identified or asserted within the aforesaid sixty (60) day period) (the "Additions") and **less** such amounts . . . which, although the obligation of CDA per the Contract, are hereby assumed and agreed to be paid outside of closing by Palm (the "Subtractions")) . . . to the Escrow Agent, and shall have provided evidence thereof to the CDA, then the Escrow Agent shall record the deed to the Remaining Maumelle Lots and the Additional Maumelle Lots not yet recorded for the benefit of Palm . . . shall utilize the funds received in repayment of the Advancement (as adjusted) to remove any encumbrances from the Remaining Maumelle Lots and to defray any costs related thereto as listed on the closing statement; and the Escrow Agent shall pay the remainder of the funds received in repayment of the Advancement, if any, to CDA's designee, Indy 10, LLC. If after receiving from Palm the funds for repayment of the Advancement, the Escrow Agent determines that the funds so received are insufficient to remove all encumbrances from the Remaining Maumelle Lots and the Additional Maumelle Lots not yet recorded . . . the Escrow Agent shall so notify CDA . . . .
>
> B. If upon the expiration of sixty (60) days after the closing date ("Maturity Date"), Palm shall NOT have repaid to CDA's designee, Indy 10, LLC, the full amount of the Advancement plus the Additions and less the Subtractions in the manner described in subsection A. . . . in that event

---

[2] The Maumelle Property included the previously conveyed Lot 16 of Osage Terrace Addition, the nine remaining lots per the Second Amendment to the Contract, and three additional lots: Lots 208 and 217 of Osage Terrace Addition and Lot 20 of Osage Terrace Addition, Phase 1-C.

[3] Lot 20 of Osage Terrace Addition, Phase 1-C was to be conveyed at closing.

> (1) Palm may elect . . . to give back to CDA one (1) lot for each $47,000.00 or part thereof of the Additions that are unpaid . . . or
>
> (2) Palm may extend the Maturity Date for the unpaid portion of the Additions for an additional forty-five (45) days . . . .

(Am. Compl. Ex. F ¶ 7.) The Closing Agreement also stipulated that, in the event that Palm Properties did not repay the adjusted advancement,

> [CDA] shall have no further obligation to convey the Remaining Maumelle Lots to Palm and Palm shall have no further right to obtain the conveyance of the Remaining Maumelle Lots; (2) Palm shall be excused from any further obligation to repay the Advancement; and (3) the transaction contemplated by the Contract shall be deemed fully closed.

(*Id.*)

On December 9, 2008, Palm Properties wired $148,552.36 to the Escrow Agent (Triad). Palm Properties argued that this was the total amount owed under the terms of the closing agreement. CDA disagreed. On December 19, 2008, Palm Properties filed suit against CDA, Indy 10, and Triad in state court for breach of contract. Subsequently, the case was removed to this Court and the complaint amended to include other interested parties and causes of action.

On July 16, 2009, C-Metro, a creditor of CDA, served a garnishment on Triad for property owned by CDA. C-Metro seeks to obtain the funds that Triad had held in escrow as payment for CDA's debt.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla*

*v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552.

### III.

In its motion for summary judgment, C-Metro asserts that it is entitled to the funds deposited with Triad because the funds were owed to CDA as repayment for the advancement and C-Metro had served a garnishment on Triad for property belonging to CDA. Palm Properties argues in response that C-Metro's motion for summary judgment should be denied because this Court already found a genuine issue of material fact as to whom the funds belong. Palm Properties also alleges that it is entitled to the funds because it deposited the funds in escrow and CDA never performed the conditions necessary to transfer the funds to CDA or Indy 10—namely, delivering title to the property free and clear of encumbrances. Even if CDA performed the conditions necessary to transfer title to the funds, Palm Properties contends in its cross-motion for summary judgment that C-Metro has no valid claim to the funds because (1) the funds were placed in escrow as a repayment

to Indy 10, not CDA, and (2) any interest that CDA or C-Metro as its creditor had in the funds was waived in the Court's Order dismissing CDA as a party to the lawsuit. Document # 98.

As in its previous order denying partial summary judgment for Palm Properties, the Court once again finds that there are genuine issues of material fact as to whom the funds belong. Palm Properties argues that because it delivered the funds to Triad, the funds were "escrowed," and it held title to those funds as a matter of law unless and until CDA removed the encumbrances from the Maumelle Property, which it did not.[4] C-Metro contends that removing the encumbrances was not a condition precedent to the transfer of the funds because the funds were a repayment of an advancement. Pursuant to Arkansas law, where an instrument is conditionally delivered to a third party, it is not operative and binding until the conditions are performed. *Chandler v. Chandler*, 21 Ark. 95 (1860); 30A C.J.S. *Escrows* § 11 (2010). In this case, pursuant to the Closing Agreement, CDA placed title to the remaining Maumelle Property and Toxaway Property in escrow. If Palm Properties performed the conditions set forth in the Agreement by repaying the advancement to Triad and providing evidence of the repayment to CDA, then Triad was instructed to:

> record the [remaining deeds] to the [Maumelle Lots] for the benefit of Palm . . . utilize the funds received in repayment of the Advancement (as adjusted) to remove any encumbrances from the Remaining Maumelle Lots and to defray any costs related thereto as listed on the closing statement; and . . . pay the remainder of the funds received in repayment of the Advancement, if any, to CDA's designee, Indy 10, LLC.

---

[4]This argument contradicts Palm Properties' response to C-Metro's motion for summary judgment, in which it points out that "this Court has already determined that material issues of fact exist which preclude the granting of summary judgment." (Pl.'s Resp. ¶ 4.)

(Am. Compl. Ex. F ¶ 7). If Palm Properties did not repay the full amount of the advancement by the maturity date, or elect one of the two alternatives listed in subsection B of paragraph 7 within two days of the maturity date, then:

> (1) CDA (including its designee, Indy 10, LLC) shall have no further obligation to convey the Remaining Maumelle Lots to Palm and Palm shall have no further right to obtain the conveyance of the Remaining Maumelle Lots, (2) Palm shall be excused from any further obligation to repay the Advancement; and (3) the transaction contemplated by the Contract shall be deemed fully closed.

(*Id.*) There is nothing in this provision to indicate that Palm Properties would hold title to the funds that were given to the escrow agent until the encumbrances were removed or that removing the encumbrances from the property was a condition precedent to transferring the funds. Rather, Palm was to repay the advancement; then, title to the remaining Maumelle lots would be transferred to Palm Properties, and the repayment would be used to remove any encumbrances from the property. Palm Properties has not provided sufficient evidence to prove, as a matter of law, that it owned the repaid funds that were being held by the escrow agent.

Nor has C-Metro proven that it is entitled to the funds as a matter of law. Pursuant to the Closing Agreement, the funds were to be used to remove encumbrances and defray closing costs, with any remaining funds going to Indy 10. C-Metro alleges that its writ of garnishment against property owned by CDA is also effective against Indy 10. "A writ of garnishment reaches all property of the judgment debtor in the hands of the third-party garnishee." *Thompson v. Bank of America*, 356 Ark. 576, 582, 157 S.W.3d 174, 178 (2004). A garnishment is generally not effective against property that belongs to someone other than the debtor. *Saunders v. Adcock*, 249 Ark. 856, 859, 462 S.W.2d 219, 221 (Ark. 1971). However, garnishment may be available as a remedy when property has been fraudulently assigned to someone other than the debtor for the purpose of

defrauding creditors. *S. Lumber Co. v. Riley*, 224 Ark. 298, 304, 273 S.W.2d 848, 852 (1955); 38 C.J.S. *Garnishment* § 79 (2010). C-Metro contends that CDA fraudulently assigned the funds to Indy 10 in the Closing Agreement in order to avoid creditors. To support its contention, C-Metro offers evidence that Indy 10 and CDA have the same address and that Ashley and Howard Bloom, the owners and officers of CDA, are also the managers of Indy 10. However, whether fraud occurred is generally a fact question, and C-Metro does not present evidence to show fraud as a matter of law. *Godwin v. Hampton*, 11 Ark. App. 205, 211, 669 S.W.2d 12, 16 (1984). Consequently, C-Metro is not entitled to summary judgment on the plaintiff's claims.

## CONCLUSION

For the reasons stated above, C-Metro's motion for summary judgment is DENIED, and Palm Properties' cross-motion for summary judgment is DENIED. Documents #81 and #100.

IT IS SO ORDERED this 7th day of June, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE